**Opinion issued December 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00940-CV

_____

**BENJAMIN "B.J." REYNOLDS, MARK MEWSHAW, WES HOBBS, AND TERRA ENERGY PARTNERS LLC, Appellants**

**V.**

**SANCHEZ OIL AND GAS CORPORATION, SANCHEZ ENERGY CORPORATION, AND SANCHEZ PRODUCTION PARTNERS LP, Appellees**

On Appeal from the 11th District Court
Harris County, Texas
Trial Court Case No. 2016-18909

**O P I N I O N**

This is an interlocutory appeal of the denial of appellants' amended motion to dismiss under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011.[1]

Appellants, Benjamin "B.J." Reynolds, Mark Mewshaw, and Wes Hobbs (collectively, the individual appellants), and Terra Energy Partners LLC (Terra), filed a joint amended motion to dismiss eight of nine counts asserted against them in the second amended petition filed by appellees, Sanchez Oil and Gas Corporation (Sanchez Oil), Sanchez Energy Corporation, and Sanchez Production Partners LP (collectively, the Sanchez parties or Sanchez), which the trial court denied. In two issues, appellants argue that the trial court erred in denying their amended motion to dismiss because: (1) it was timely; and (2) the TCPA applies and bars eight of the nine causes of action asserted in the Sanchez parties' second amended petition. In a third issue, appellants argue that the trial court abused its discretion by finding that

---

[1] In 2019, the Texas Legislature amended several provisions of the TCPA, which became effective on September 1, 2019, and apply to legal actions filed on or after that date. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 462 (Tex. App.—Houston [1st Dist.] 2020, pet dism'd) (en banc) (citing Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12, secs. 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010, Tex. Sess. Law Serv. 684, 687). This suit was filed before September 1, 2019, and thus it is governed by the statute as it existed before the amendments. *See id.* All citations to the TCPA in this opinion are to the pre-amendment version of the TCPA. *See id.*

their amended TCPA motion was intended solely for delay and by awarding costs and attorney's fees to the Sanchez parties.[2]

We affirm.

## Background

The Sanchez parties are affiliated entities engaged in the business of oil and gas exploration and production, and they operate in Texas, the Gulf Coast, Mid-Continent, and Rocky Mountain regions. Over the course of their forty-five years in operation, the Sanchez parties have allegedly invested in and developed "a wide array of valuable trade secret materials relating to the oil and gas industry" that provide them with "extensive competitive advantages" in that industry. After three of their employees—Reynolds, Mewshaw, and Hobbs—resigned and went to work for start-up Terra, a competitor of Sanchez Oil, around the same time period as each other, the Sanchez parties discovered that their trade secrets and other confidential and proprietary information had been copied and taken.

---

[2]     Terra presented four issues, separating out the issue of the applicability of the TCPA into two separate issues: whether the Sanchez parties provided sufficient evidence of each element of their challenged claims and whether their claims are legally barred. In their separately filed brief, the individual appellants presented five issues, separating out the issue of the applicability of the TCPA into three issues: whether the TCPA applies, whether appellants established defenses, and whether the Sanchez parties provided sufficient evidence of each element of each challenged claim. For the reasons we discuss below, we do not address appellants' issues regarding the applicability of the TCPA.

An internal investigation revealed that Reynolds, Mewshaw, and Hobbs had copied this information onto hard drives and emailed it to themselves before going to work for Terra, and the Sanchez parties later learned that Terra and the former employees were using and disclosing this information, including in an acquisition of another company that bore resemblances to acquisitions contemporaneously made by the Sanchez parties. The Sanchez parties sent several letters to Terra, Reynolds, Mewshaw, and Hobbs demanding the return of their files. Terra responded to one letter refusing to admit or deny that Reynolds, Mewshaw, or Hobbs had taken the Sanchez parties' information and did not say whether Terra or the individuals, now employees of Terra, had used or disclosed the information. After the filing of the petition in this case shortly after Mewshaw and Hobbs resigned from Sanchez Oil, appellants sent the Sanchez parties "a box containing 13 different USB storage devices." Eventually Reynolds produced "his two external drives containing Sanchez files, and Hobbs produced several additional devices as well."

## A. The Original and First Amended Petitions

Within a month of Mewshaw's and Hobbs's leaving Sanchez Oil in March 2016, and after the Sanchez parties had sent their demand letters to appellants, the Sanchez parties filed the underlying lawsuit. They amended their petition four months later in July 2016, and they amended it a second time two years after that in July 2018.

4

The original and first amended petitions are virtually identical, with only minor variations as noted. In both petitions, the Sanchez parties alleged that Sanchez Oil hired Reynolds, Mewshaw, and Hobbs as engineers in 2014. Sanchez Oil protected its trade secret and confidential information by requiring its employees with access to trade secrets and other confidential information, including Reynolds, Mewshaw, and Hobbs, to sign an employee handbook imposing "rigorous confidentiality obligations on all employees." Sanchez Oil also restricted employees' access to its files on a need-to-know basis and tracked its employees' computer activities.

In early 2015, a private equity firm established Terra, which is a "direct competitor of Sanchez." Terra began soliciting Reynolds in June (according to the original petition) or early July 2015 (according to the first amended petition). Terra offered Reynolds a position as Vice President, and he accepted this position on July 29, 2015. Reynolds gave Sanchez Oil two weeks' notice of his resignation on July 31 or August 1. On July 30, Reynolds copied several thousand confidential and proprietary files belonging to the Sanchez parties onto a USB thumb drive, and the first amended petition added an allegation that Reynolds was "acting on behalf of and with the encouragement of his new employer Terra." During his final two weeks at Sanchez Oil, Reynolds purchased another, larger external hard drive and copied more files, and he emailed to his personal account "a compiled master list of Sanchez

vendors and suppliers." The Sanchez parties alleged that Reynolds intended to take their confidential information and "use it to boost his own value and to help jump-start his new employer Terra, which as a brand-new company lacked any comparable knowledge base."

Both the original and first amended petitions detailed Terra's acquisition of WPX Energy, which is not a party to the underlying proceedings, and alleged that Terra used the Sanchez parties' trade secret and other confidential information "to identify, model, and bid on the WPX acreage." The Sanchez parties alleged that Terra's acquisition of WPX "share[d] many similarities with Sanchez's" own contemporaneous acquisition of the Catarina field, which consists of more than 100,000 acres in the Eagle Ford shale in South Texas. For example, the Sanchez parties alleged that both acquisitions "have or will benefit tremendously from Sanchez's cost-reduction program and techniques" that make up a part of its trade secrets and other confidential and proprietary information. The first amended petition added an allegation that Reynolds improperly used the Sanchez parties' information, even while still employed by Sanchez Oil, by "providing input to Terra's acquisition model for a large South Texas conventional gas asset, utilizing Sanchez's trade secret information[,]" and that "Terra hired Reynolds to gain access to this Sanchez information." Both petitions characterized appellants' actions as "industrial espionage."

In addition to Terra and Reynolds's alleged theft and use of the Sanchez parties' information, the Sanchez parties alleged that "Reynolds began targeting and soliciting additional [Sanchez Oil] employees for Terra," including Mewshaw and Hobbs. The Sanchez parties alleged that "Terra recruited Hobbs to further its scheme to misappropriate Sanchez's trade secret [and other confidential and proprietary] information"; that "Hobbs coordinated his departure from [Sanchez Oil] with Mewshaw," who copied additional trade secrets and other confidential and proprietary files belonging to the Sanchez parties onto an external USB drive, as Reynolds had done; and that "Hobbs had experience and was facile with much of the stolen information and . . . was hired to assist Terra in exploiting Sanchez's information." The first amended petition added that Hobbs also copied numerous confidential files and information to a cloud account, as Reynolds and Mewshaw had done. While the original petition stated that "this entire operation was part of a coordinated plan by Terra to extract Sanchez'[s] trade secrets and confidential information," the amended petition deleted this language.

As we stated above, the Sanchez parties discovered the theft of their trade secrets and confidential and proprietary information shortly after Mewshaw and Hobbs followed Reynolds from Sanchez Oil to work for Terra. The Sanchez parties sent a letter to Terra and each individual appellant regarding the alleged theft of its information, and Terra responded on behalf of itself and the individual appellants

7

declining to admit or deny whether the individuals had taken any information and failing to address whether it had used or disclosed the Sanchez parties' information.

Shortly thereafter, and within a month of Mewshaw's and Hobbs's leaving Sanchez Oil's employment, the Sanchez parties filed their original petition against all appellants. The Sanchez parties filed their first amended petition four months later. The Sanchez parties also requested injunctive relief against appellants, prohibiting them from using, disclosing, modifying, or destroying the trade secrets and confidential information, and ordering them to return such information to the Sanchez parties.

Both the original and first amended petitions asserted five causes of action:

1.    misappropriation of trade secrets against all defendants;

2.    breach of fiduciary duty against all individual defendants;

3.    aiding and abetting breaches of fiduciary duty against all defendants;

4.    breach of contract against all individual defendants; and

5.    violation of the Harmful Access by Computer Act against Reynolds and Mewshaw.[3]

---

[3]    *See* TEX. PENAL CODE ANN. § 33.02(a) ("A person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."); TEX. CIV. PRAC. & REM. CODE ANN. § 143.001(a) ("A person injured or whose property has been injured as a result of a violation under Chapter 33, Penal Code, has a civil cause of action if the conduct constituting the violation was committed knowingly or intentionally.").

8

The language used in each cause of action in the first amended petition was identical to the language used in the original petition. In their cause of action for misappropriation of trade secrets, the Sanchez parties alleged that appellants misappropriated numerous trade secrets owned by the Sanchez parties "by acquiring it with knowledge that it had been acquired via improper means and by using and disclosing the information without Sanchez's consent." Their causes of action for breaches of fiduciary duty and aiding and abetting such breaches were based on the individual appellants' misappropriation of the Sanchez parties' trade secrets, namely that they owed fiduciary duties to the Sanchez parties, that all appellants knew about those fiduciary duties, and that all appellants "knowingly participated in the [individual appellants'] breaches of the fiduciary duties they owed Sanchez," including by using their employee access to the Sanchez parties' files "for their own personal gain and for Terra's gain," by failing to act in good faith and primarily for the benefit of the Sanchez parties, and by using and disclosing the Sanchez parties' confidential information. The Sanchez parties also alleged that "[a]ll [appellants] are jointly and severally liable as joint tortfeasors for these breaches."

Appellants did not file a motion to dismiss under the TCPA within sixty days of the service of either the original or first amended petitions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b) ("A motion to dismiss a legal action under [the

9

TCPA] must be filed not later than the 60th day after the date of service of the legal action.").

**B.    The Second Amended Petition**

On July 20, 2018, two years after filing their first amended petition and shortly before trial, the Sanchez parties filed a second amended petition. This petition was similar to the first two petitions, characterizing appellants' conduct as "industrial espionage" and asserting causes of action for misappropriation of trade secrets and breach of fiduciary duty, which were nearly identical to the first two petitions. There were, however, some notable differences.

For example, the second amended petition replaced the claim for aiding and abetting breaches of fiduciary duty in the first two petitions with count 6 for assisting or encouraging breaches of fiduciary duty and count 7 for assisting and participating in breaches of fiduciary duty. Like the earlier aiding-and-abetting claims, counts 6 and 7 were alleged against all appellants. Counts 6 and 7 both alleged that Reynolds, Hobbs, and Mewshaw owed fiduciary duties to the Sanchez parties which they breached by, among other things, using their access to the Sanchez parties' confidential information for their own personal gain and for Terra's gain, acting in their own interests at the expense of the Sanchez parties, taking and misappropriating the information, and disclosing the information to unauthorized recipients. Both counts also alleged that Mewshaw breached his fiduciary duty by soliciting another

10

Sanchez Oil employee on behalf of Terra while still employed by Sanchez Oil. These more specific allegations also appear in the cause of action against the individual appellants for breach of their fiduciary duty, which is identical across all three petitions. Counts 6 and 7 also alleged that each individual appellant and Terra knew the individuals owed fiduciary duties to the Sanchez parties. Count 6 alleged that appellants "knowingly and intentionally participated, by providing assistance or encouragement, in the [individual appellants'] breaches of the fiduciary duties they owed to Sanchez." Count 7 alleged that appellants "provided substantial assistance to one or more of Defendants Reynolds, Hobbs, and Mewshaw in breaching their fiduciary duties to Sanchez" and that all appellants' "participation was a substantial factor in causing the breach of fiduciary duties to Sanchez."

The second amended petition also added counts 2–4: count 2 for assisting or encouraging trade secret misappropriation, count 3 for assisting and participating in trade secret misappropriation, and count 4 for conspiracy to commit trade secret misappropriation. Counts 2–4 were asserted against all appellants, and counts 2 and 4 (but not count 3) alleged that appellants were "jointly and severally liable as joint tortfeasors for the misappropriation of Sanchez's trade secrets." Count 4 specifically alleged that all appellants "were members of a combination of persons" and that "[t]he object of the combination was to accomplish the unlawful purpose of

11

misappropriating Sanchez's trade secrets or to accomplish a lawful purpose by the unlawful means of misappropriating Sanchez's trade secrets."

In addition to counts 2–4, 6, and 7, the second amended petition added some language not present in the first two petitions. For example, when discussing Reynolds's acceptance of the vice president position at Terra, the petition added,

> The very next day, acting on behalf of and as an officer of his new employer Terra, Reynolds went to Sanchez and copied several thousand Sanchez files onto a USB thumb drive. These documents covered virtually every aspect of Sanchez's business. Terra is directly and/or vicariously liable for all of Reynolds' actions set forth herein.

Furthermore, when discussing how the evidence that the Sanchez parties had obtained in discovery "strongly supports the conclusion" that the taking of the Sanchez parties' trade secrets and other confidential information "was agreed to and coordinated by all [appellants]," the second amended petition added some examples, including:

- Reynolds met and conversed with Terra repeatedly in the days leading up to his copying of Sanchez's information.

- Reynolds's initial wave of copying began the day after he accepted Terra's offer.

- Reynolds subsequently met with Keith Brown[4] on August 4, 2015[,] to discuss "model inputs," among other things. The following day, Reynolds began extracting even more Sanchez files using an even larger external drive, which he had apparently purchased for that very purpose.

---

[4] The record on appeal indicates that Keith Brown was Terra's chief operating officer.

- Reynolds was in regular contact with Mewshaw and Hobbs beginning in November 2015 and continuing through their eventual departure from Sanchez.

- Among other things, Reynolds discussed with [Mewshaw and Hobbs] Sanchez's success at accelerating its rig moves, information regarding WPX's operations, and information regarding Terra's plan to achieve cost reductions after acquiring the WPX asset.

The second amended petition also specified that, in "July 2015, Terra and Reynolds had a meeting of the minds to misappropriate Sanchez's trade-secret information and to use, acquire, and disclose it without Sanchez's consent," and that, in "February 2016, Terra, Reynolds, Hobbs, and Mewshaw had a meeting of the minds to continue misappropriating Sanchez's trade-secret information and to use, acquire, and disclose it without Sanchez's consent."

## C. Appellants' Original TCPA Motion to Dismiss Counts 2–4

On September 7, 2018, within sixty days of the filing of the second amended petition, appellants filed an opposed joint motion to dismiss under the TCPA (original TCPA motion). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a) (authorizing party to file motion to dismiss "legal action" that "is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association"), (b) (requiring motion to dismiss to "be filed not later than the 60th day after the date of service of the legal action"). In their original TCPA motion,

13

appellants only sought dismissal of counts 2–4 in the second amended petition, specifically representing that,

> Although [the Sanchez parties] added a total of four causes of action in their Second Amended Petition to bring the total from five to nine, one of the "new" causes of action was a mere recasting of the aiding and abetting breach of fiduciary duty claim that [the Sanchez parties] asserted in their original and first amended petitions. For this reason, [appellants] bring this motion to dismiss only as to the three entirely new causes of action based on conspiracy and aiding and abetting **misappropriation of trade secrets**.

(Emphasis in original.)

The Sanchez parties filed a notice of non-opposition to appellants' motion to dismiss, stating they believed appellants' motion lacked merit but "[n]onetheless, to avoid the inevitable delay" of an interlocutory appeal of a TCPA order, the Sanchez parties did not oppose the motion. The Sanchez parties also filed a notice of non-suit of counts 2–4. The trial court signed an order granting the original TCPA motion on September 25, 2018.

## D.     Appellants' Amended TCPA Motion to Dismiss All But One Remaining Count

On September 14, 2018, appellants filed an amended opposed joint motion to dismiss under the TCPA (amended TCPA motion). In it, appellants argued that the second amended petition "contain[s] newly alleged causes of action and facts that resulted in [c]ounts 1–8 each becoming a new legal action as defined by the TCPA," and appellants sought dismissal of all causes of action except count 9 for violation

14

of the Harmful Access by Computer Act against Reynolds and Mewshaw. Appellants acknowledged that "[t]he TCPA requires that a motion to dismiss a legal action be brought 'not later than the 60th day after the date of service of the legal action[,]'" and that, "[f]or this reason, TCPA motions are traditionally brought at the beginning of a lawsuit (when legal actions are typically first served on the other parties)." However, appellants argued that "an amended pleading must be regarded as a new legal action subject to a TCPA motion to dismiss within 60 days of its filing," although they acknowledged that other courts require "new causes of action—or new TCPA-covered factual allegations" to restart the sixty-day TCPA deadline "as to that legal action." Appellants also denied filing their amended TCPA motion for delay. Terra filed a reply brief separately from the individual appellants, arguing that the plain language of the TCPA authorizes a motion to dismiss within sixty days of any amended petition, regardless of whether it asserts new claims or factual allegations, because an amended petition fits within the statutory definition of a "legal action."

In response, the Sanchez parties argued that appellants had changed their position from their original TCPA motion, which the trial court had granted and in which they had argued that only counts 2–4 as alleged in the second amended petition were new claims, not that all claims were new. The Sanchez parties denied that they had added any new material factual allegations, emphasizing their

15

voluntary non-suit and non-opposition to dismissal of counts 2–4 in order to move the case along. The Sanchez parties argued that their second amended petition merely reinforced existing factual allegations present in their original and first amended petitions, but did not change their essential factual allegations, and, therefore, the amended TCPA motion was untimely because it was not filed within sixty days of the original petition.

The trial court held an oral hearing, at which the parties reiterated these arguments. The trial court denied appellants' amended TCPA motion to dismiss. This appeal followed.

**Timeliness Under the Texas Citizens Participation Act**

In their first issue, appellants argue that the trial court erred in denying their amended TCPA motion for untimeliness. In its brief, Terra first argues that the filing of an amended petition alone resets the sixty-day deadline to file a TCPA motion under the plain language of the statute. Terra alternatively argues that an amended petition asserting new parties or new claims restarts the sixty-day TCPA deadline and that the Sanchez parties asserted new claims in their second amended petition because they asserted new causes of action, a new theory of liability, and new factual allegations. Reynolds, Mewshaw, and Hobbs primarily urge Terra's first argument—that an amended petition alone resets the TCPA deadline under the plain language of the statute—and they summarily adopt Terra's remaining arguments.

16

The Sanchez parties respond that they did not assert new claims in their second amended petition because (1) they have not changed the crux of their allegations since their original petition, (2) their second amended petition merely split one legal cause of action into two separate causes of action and added factual detail that did not change their essential factual allegations, and (3) they voluntarily non-suited counts 2–4, which the trial court dismissed with prejudice, so those causes of action are not at issue in this appeal.

## A. Standard of Review

We review de novo a trial court's denial of a TCPA motion to dismiss. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.—Houston [1st Dist.] 2020, pet dism'd) (en banc) (citing *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). In deciding a TCPA motion to dismiss, trial courts "shall consider the pleadings and supporting and opposing affidavits" filed by the parties. *Id.* (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a)).

## B. Governing Law

The TCPA is an anti-SLAPP (Strategic Lawsuits Against Public Participation) statute enacted by the Texas Legislature "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and,

17

at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 426 (Tex. App.—Dallas 2019, pet. denied) (stating purpose of TCPA is "to curb strategic lawsuits against public participation"). The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *Gaskamp*, 596 S.W.3d at 469 (citing *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015)).

The TCPA authorizes a defendant to file a motion to dismiss a legal action that is based on or is in response to his exercise of his rights of free speech, of petition, or of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *Gaskamp*, 596 S.W.3d at 457. The motion must be filed within sixty days after the date of service of the "legal action" he seeks to have dismissed.[5] TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b).

The TCPA defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). This Court and our sister appellate

---

[5] Section 27.003(b) allows a trial court to extend the time to file a motion to dismiss under the TCPA on a showing of good cause, but appellants do not argue that the deadline should have been extended in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b) (pre-amendment).

18

courts have repeatedly held that an amended petition that asserts "new claims based upon new factual allegations will reset a TCPA deadline as to the new legal action," but "an amended petition, by itself, does not reset the 60-day clock if it adds no new claims and relies upon the same factual allegations underlying the original petition." *Chandni I, Inc. v. Patel*, 601 S.W.3d 13, 17 (Tex. App.—El Paso 2019, pet. denied) (citation omitted); *Jordan v. Hall*, 510 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Paulsen v. Yarrell*, 455 S.W.3d 192, 197 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *In re Estate of Check*, 438 S.W.3d 829, 837 (Tex. App.—San Antonio 2014, no pet.)), *superseded by statute on other grounds as stated in Jordan*, 510 S.W.3d at 198; *James v. Calkins*, 446 S.W.3d 135, 146 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

"Additional factual details in a subsequent petition also do not reset the TCPA clock if the essential factual allegations as to the claim were present in the prior petition." *Chandni I*, 601 S.W.3d at 17 (citing *In re Estate of Check*, 438 S.W.3d at 837, *Paulsen*, 455 S.W.3d at 198, and *Mancilla v. Taxfree Shopping, Ltd.*, No. 05-18-00136-CV, 2018 WL 6850951, at *3 (Tex. App.—Dallas Nov. 16, 2018, no pet.)); *Paulsen*, 455 S.W.3d at 198 ("Despite the additional details . . . , the third amended petition relied on the same essential factual allegations as the claim stated in [the plaintiff's] original petition, and therefore it did not reset the deadline for [the defendant] to file a motion to dismiss under the TCPA.") (citation omitted). Slight

changes to the word order, phrasing, or structure of claims in amended petitions that are otherwise based on the same essential factual allegations previously asserted do not constitute new claims. *Chandni I*, 601 S.W.3d at 20 (citing *Paulsen*, 455 S.W.3d at 198). Moreover, "an attempt to split a claim into distinct but essentially identical claims that are based on the same underlying facts as the original claim does not assert a new legal action resetting the 60-day TCPA filing deadline." *Id.* (citing *Paulsen*, 455 S.W.3d at 198).

This standard is based on the purpose of the TCPA, which is "to provide for the *early* dismissal of claims that seek to inhibit a defendant's constitutional rights to petition, speak freely, associate freely, and participate in government as permitted by law." *Id.* (citing *Paulsen*, 455 S.W.3d at 198); TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. The standard is also based on Texas's fair-notice pleading standard. *See Kinder Morgan SACROC, LP v. Scurry Cty.*, 589 S.W.3d 889, 898 (Tex. App.—Eastland 2019, pet. filed) (holding that fair-notice standard controls analysis of whether amended petition asserts new "legal action") (citing *Fawcett v. Rogers*, 492 S.W.3d 18, 26–27 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (applying fair-notice standard in appeal of trial court's denial of TCPA motion to conclude that petition sufficiently put defendants on notice of defamation per se claim)); *see also In re Lipsky*, 460 S.W.3d at 590 ("Our procedural rules . . . require that the pleading provide fair notice of the claim and the relief sought such that the opposing party

20

can prepare a defense.") (citing TEX. R. CIV. P. 45, 47). Under the fair-notice standard, "a plaintiff's pleading is only required to 'give a short statement of the cause of action sufficient to give the opposing party fair notice of the claim involved.'" *Fawcett*, 492 S.W.3d at 26–27 (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex. 2004), and *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 357 (Tex. App.—Houston [1st Dist.] 2012, no pet.)). The fair-notice standard does not require a plaintiff to "set out in his pleadings the evidence upon which he relies to establish his asserted cause of action." *Miranda*, 133 S.W.3d at 230 (citing *Paramount Pipe & Supply Co., Inc. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex. 1988)). "Even the omission of an element is not fatal if the cause of action 'may be reasonably inferred from what is specifically stated.'" *In re Lipsky*, 460 S.W.3d at 590 (quoting *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993)). Thus, an amended petition asserts a new legal action if it is a new claim based on new factual allegations that were not included in or reasonably inferred from the allegations in prior petitions. *See Chandni I*, 601 S.W.3d at 17, 20; *Kinder Morgan*, 589 S.W.3d at 898; *Jordan*, 510 S.W.3d at 198; *Paulsen*, 455 S.W.3d at 197–98; *Fawcett*, 492 S.W.3d at 26.

## C.    Analysis

### 1.    Whether Filing an Amended Petition Alone Constitutes a "Legal Action"

In both opening briefs, Terra and the individual appellants argue that, under the plain language of the TCPA, the filing of an amended petition alone is a "legal action" that resets the sixty-day deadline to file a motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b) (authorizing motion to dismiss under TCPA within 60 days of service of "legal action"). This Court has previously rejected appellants' argument. *See Jordan*, 510 S.W.3d at 198 ("Although an amended petition asserting claims based upon new factual allegations may reset a TCPA deadline as to the newly-added substance, the deadline for a TCPA motion is not reset when a plaintiff files an amended petition that adds no new claims and relies upon the same factual allegations underlying an original petition.") (citing *James*, 446 S.W.3d at 146); *Paulsen*, 455 S.W.3d at 197 ("An amended pleading that does not add new parties or claims does not restart the deadline for filing a motion to dismiss under the TCPA."). We also note that all our sister courts that have considered this argument have likewise rejected it. *Chandni I*, 601 S.W.3d at 20 (holding that defendants' TCPA motion to dismiss claims in amended petition was untimely because amended petition did not add new claims but merely added factual detail to same essential factual allegations that were present in prior petition); *In re Estate of Check*, 438 S.W.3d at 836–37 (holding Check's TCPA motion to dismiss

22

counterclaim in amended petition was untimely because counterclaim did not add new parties or claims and because allowing TCPA motion would "defeat the [TCPA's] purpose of dismissing unmeritorious suits based on or related to the exercise of free speech early in the litigation or in an expeditious manner") (citing *Better Bus. Bureau of Metro. Dallas, Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied)); *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 193 (Tex. App.—El Paso 2014, no pet.) (holding that defendant's TCPA motion to dismiss claims in subsequent amended petition was untimely because sixty-day deadline to file TCPA motion was triggered by prior amended petition duly served upon and giving notice of claims to defendant); *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 529–30 (Tex. App.—Corpus Christi– Edinburg 2015, no pet.) (holding that TCPA motion to dismiss claims in amended petition was untimely as to two claims asserted in prior petition but timely as to two new claims first asserted in amended petition); *Mancilla*, 2018 WL 6850951, at *3– 4 (holding TCPA motion untimely because amended petition "simply refined its earlier, broad allegations," which "do nothing more than provide specificity of TFS's claim of which appellants had notice in the original petition" and, "[t]hus, appellants' alleged need for protection under the TCPA motion was apparent as of the original petition").

Because we are bound by our own precedent, we conclude that the trial court did not err in denying appellants' amended motion to dismiss as untimely based on the filing of the second amended petition alone. *See In re Expunction*, 465 S.W.3d 283, 288–89 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex. 1995), and *Gutierrez v. Collins*, 583 S.W.2d 312, 317 (Tex. 1979)).

### 2. Whether Adding New Claims or New Parties to an Amended Petition Constitutes a "Legal Action"

Terra alternatively argues that the second amended petition added new causes of action, new theories of liability, and new factual allegations, and therefore it asserted new claims that are subject to dismissal under the TCPA on a motion to dismiss filed within sixty days of the second amended petition. The parties do not dispute that appellants filed both their original TCPA motion—which sought dismissal with prejudice only of counts 2–4 and which the trial court granted without opposition from the Sanchez parties—and their amended TCPA motion, the denial of which is the subject of this appeal, within sixty days of the filing of the second amended petition.

#### a. New Causes of Action

Appellants argue that counts 1, 6, and 7 in the second amended petition are new causes of action, which reset the sixty-day deadline to file a TCPA motion to dismiss. Appellants focus their arguments on counts 6 and 7 for assisting,

24

encouraging, and participating in breaches of fiduciary duty, arguing that they contain additional elements that were not present in the prior claim they replaced for aiding and abetting breaches of fiduciary duty. The Sanchez parties respond that counts 6 and 7 are not new claims, but rather are a split of their previously asserted aiding-and-abetting claim into two separate claims that are based on the same factual allegations as the aiding-and-abetting claim.

As we stated above, "new claims based upon new factual allegations" asserted for the first time in an amended petition may be subject to a motion to dismiss under the TCPA within sixty days of the filing of the amended pleading. *Chandni I*, 601 S.W.3d at 17; *Jordan*, 510 S.W.3d at 198; *Paulsen*, 455 S.W.3d at 197 (citing *In re Estate of Check*, 438 S.W.3d at 837); *James*, 446 S.W.3d at 146. Adding factual detail, changing the word order, phrasing, or structure, or splitting a claim into distinct but essentially identical claims based on the same underlying facts does not assert a new "legal action." *Chandni I*, 601 S.W.3d at 17, 20; *Paulsen*, 455 S.W.3d at 198.

Count 1, for misappropriation of trade secrets, is identical across all three petitions. Appellants' brief on appeal states that count 1 in the second amended petition is a new cause of action, but appellants offer no further argument. *See* TEX. R. APP. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made"). Because appellants have offered no argument that count

25

1 is a new claim based on new factual allegations, and because our review shows that count 1 is identical across all three petitions, we conclude that count 1 in the second amended petition is not a new claim based on new factual allegations. *See, e.g.*, *Chandni I*, 601 S.W.3d at 17 (stating that only new claim based upon new factual allegations is "legal action" resetting sixty-day deadline to file TCPA motion); *Paulsen*, 455 S.W.3d at 197.

Count 6 is for assisting or encouraging breaches of fiduciary duty, and count 7 is similarly for assisting and participating in breaches of fiduciary duty. Both causes of action contain substantially similar language, alleging that Reynolds, Mewshaw, and Hobbs owed various fiduciary duties to the Sanchez parties and breached those duties by, among other things, using their access to the Sanchez parties' confidential information for their own personal gain and for Terra's gain, acting in their own interests at the expense of the Sanchez parties, taking and misappropriating the information, and disclosing the information to unauthorized recipients. Both counts also allege that Mewshaw further breached his fiduciary duty by soliciting another Sanchez Oil employee on behalf of Terra while he was still employed by Sanchez Oil. Count 6 separately alleges that appellants "knowingly and intentionally participated, by providing assistance or encouragement, in the [individual appellants'] breaches of the fiduciary duties they owed to Sanchez." Count 7 separately alleges that appellants "provided substantial assistance to one or

26

more of Defendants Reynolds, Hobbs, and Mewshaw in breaching their fiduciary duties to Sanchez" and that all appellants' "participation was a substantial factor in causing the breach of fiduciary duties to Sanchez." Both counts allege that appellants were jointly and severally liable as joint tortfeasors for the breaches.

According to the Sanchez parties, these two claims were merely split from and based on the same factual allegations as their earlier claim for aiding and abetting breaches of fiduciary duty. The earlier aiding-and-abetting claim alleged that Reynolds, Mewshaw, and Hobbs owed fiduciary duties to the Sanchez parties, that all appellants knew the three individuals owed the fiduciary duties, that all appellants "knowingly participated in the [individual appellants'] breaches of the fiduciary duties they owed Sanchez," and that all appellants "are jointly and severally liable as joint tortfeasors for these breaches." This claim did not separately state how the individuals breached their fiduciary duties as counts 6 and 7 do, but the separate cause of action for breach of fiduciary duty—which is identical across all three petitions—included the list of alleged breaches that appears in counts 6 and 7. The factual allegations in the first amended petition included allegations that Reynolds was "acting on behalf of and with the encouragement of his new employer Terra" when he misappropriated the Sanchez parties' trade secrets and other confidential information and that "Terra hired Reynolds to gain access to this Sanchez information."

We therefore agree with the Sanchez parties that counts 6 and 7 merely split the aiding-and-abetting claim into two essentially identical claims that are based on the same underlying facts as the claim for aiding and abetting. *See Chandni I*, 601 S.W.3d at 20 ("[A]n attempt to split a claim into two distinct but essentially identical claims that are both based on the same underlying facts as the original claim does not assert a new legal action resetting the 60-day TCPA filing deadline.") (citing *Paulsen*, 455 S.W.3d at 198). Counts 6 and 7 do include some additional factual details, such as restating the list of alleged breaches that already appeared in the claim for breach of fiduciary duty and adding that appellants' knowing and intentional participation was "by providing assistance or encouragement" and by "provid[ing] substantial assistance to one or more of [appellants] in breaching their fiduciary duties to Sanchez." *See id.* (stating that slight differences in word order, phrasing, and structure does not state new claim). However, all three causes of action—the aiding-and abetting claim in the first two petitions and counts 6 and 7 in the second amended petition—rely on the same essential factual allegations that appellants misappropriated the Sanchez parties' trade secrets and other confidential information for their own gain and at the Sanchez parties' expense. *See id.* at 17; *Jordan*, 510 S.W.3d at 198; *Paulsen*, 455 S.W.3d at 197.

Appellants argue that counts 6 and 7 are new causes of action because they include elements not included in the earlier aiding-and-abetting cause of action.

28

Appellants argue that the earlier claim was based on subsection (a) of the Restatement (Second) of Torts section 876 while counts 6 and 7 were based on subsections (b) and (c). Section 876

> impos[es] liability on a person for the conduct of another which causes harm if the defendant:
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996) (quoting RESTATEMENT (SECOND) OF TORTS § 876 (1977)).

However, the Sanchez parties did not expressly assert these claims under the Restatement (Second) of Torts, and the Texas Supreme Court has stated that it is "an open question" whether Texas recognizes a theory of liability under section 876 of the Restatement. *See id.* Assuming without deciding that these claims were asserted under the Restatement and that Texas has adopted section 876 into its law, we disagree with appellants that the earlier aiding-and-abetting claim was solely based on subsection 876(a). As we stated above, that claim alleged that all appellants "knowingly participated in the [individual appellants'] breaches of the fiduciary

29

duties they owed Sanchez" and that all appellants "are jointly and severally liable as joint tortfeasors for these breaches." The factual allegations included that Reynolds "act[ed] on behalf of and with the encouragement of his new employer Terra" when he misappropriated the Sanchez parties' trade secrets and other confidential information and that "Terra hired Reynolds to gain access to this Sanchez information." Thus, the earlier petitions alleged not only that each appellant acted in concert with the individual appellants under subsection (a), but also that each appellant provided substantial assistance or encouragement to the other, which itself is a breach of the individual's fiduciary duty under subsections (b) and (c).

In sum, counts 6 and 7 are based on the same factual allegations present across all three petitions: that Terra and the individual appellants worked together to misappropriate the Sanchez parties' trade secrets and other confidential information to use for their own benefit and against the Sanchez parties' benefit. We therefore conclude that counts 1, 6, and 7 in the second amended petition are not new claims, and therefore appellants' motion to dismiss these causes of action under the TCPA was untimely.

### b. *New Theory of Liability*

Appellants next argue that the second amended petition added a new theory of liability by asserting for the first time that Reynolds was acting "as an officer" of Terra when he misappropriated the Sanchez parties' trade secrets, and therefore that

Terra is directly and/or vicariously liable for all of Reynolds's actions, including actions he took prior to being employed by Terra. We disagree.

The second amended petition states,

> Reynolds signed an offer letter from Terra on July 29, 2015[,] to become Terra's Vice President of Operations. The very next day, acting on behalf of and as an officer of his new employer Terra, Reynolds went to Sanchez and copied several thousand Sanchez files onto a USB thumb drive. These documents covered virtually every aspect of Sanchez's business. Terra is directly and/or vicariously liable for all of Reynolds' actions set forth herein.

Both prior petitions stated that Reynolds was offered a position as vice president by Terra, which he accepted, but before leaving his employment with Sanchez Oil, Reynolds misappropriated the Sanchez parties' information that Terra then used and disclosed. The first amended petition specifically stated that Reynolds was "acting on behalf of and with the encouragement of his new employer Terra" when Reynolds misappropriated the Sanchez parties' trade secrets and other confidential information, that "Terra hired Reynolds to gain access to this Sanchez information," that "Reynolds began targeting and soliciting additional [Sanchez Oil] employees for Terra," and that Hobbs and Mewshaw, employees of Sanchez Oil whom Reynolds successfully recruited for Terra, similarly misappropriated information from the Sanchez parties before resigning from Sanchez Oil to work at Terra.

31

The original petition stated that "this entire operation was part of a coordinated plan by Terra to extract Sanchez'[s] trade secrets and confidential information." Moreover, the Sanchez parties' claim for aiding and abetting breaches of fiduciary duty, which is based almost exclusively on the misappropriation of trade secrets and other confidential information, stated, "All [appellants] are jointly and severally liable as joint tortfeasors for these breaches." These allegations provided fair notice to appellants that the Sanchez parties claimed Reynolds misappropriated information on behalf of Terra and that they sought to hold Terra directly liable for its own conduct and vicariously liable for Reynolds's actions prior to working at Terra, including his misappropriation of the Sanchez parties' trade secrets and other confidential information prior to his resignation from Sanchez Oil. *See In re Lipsky*, 460 S.W.3d at 590; *Kinder Morgan*, 589 S.W.3d at 898 (citing *Fawcett*, 492 S.W.3d at 26). Despite the minor additional factual details, these are the same essential factual allegations first asserted in the original and first amended petitions. *See Chandni I*, 601 S.W.3d at 17, 20; *Paulsen*, 455 S.W.3d at 198.

We conclude that appellants' motion to dismiss under the TCPA was untimely because the supposedly new theory of liability was not a new "legal action" which reset the sixty-day deadline to file a TCPA motion to dismiss.

### c. Additional Factual Allegations

Appellants also argue that the Sanchez parties pleaded new factual allegations of TCPA-protected activity as a basis for counts 1–8, which therefore restarted the sixty-day clock to file a motion to dismiss those counts under the TCPA. Appellants argue that "the Sanchez parties are now alleging that [appellants] were involved in a massive scheme to assist with the misappropriation of their alleged trade secrets." But both the original and first amended petitions stated that "Terra recruited Hobbs to further its scheme to misappropriate Sanchez's trade secret [and other confidential and proprietary] information," and they explained that Terra recruited Sanchez Oil's employees, the first of whom was Reynolds, who was made Terra's vice president of operations and who, in turn, recruited Mewshaw and Hobbs. The original and first amended petitions further explained how each individual, after meeting with Terra, possibly about employment there, stole large amounts of information from the Sanchez parties, went to work for Terra, and used and disclosed the Sanchez parties' information to benefit themselves and Terra, including by acquiring a competing company. Thus, we disagree that the second amended petition alleged for the first time that appellants were involved in a massive scheme to misappropriate, or to assist in the misappropriation of, the Sanchez parties' information. *See Paulsen*, 455 S.W.3d at 198 ("Despite the additional details . . . , the third amended petition relied on the same essential factual allegations as the claim stated in [the plaintiff's]

33

original petition, and therefore it did not reset the deadline for [the defendant] to file a motion to dismiss under the TCPA.") (citation omitted).

Appellants also argue that new factual allegations added to the second amended petition constitute new claims, and they point to the following language: (1) "that [appellants] 'met and conversed,' 'discussed' their plans, and were 'in regular contact," and (2) "that [appellants] had a 'meeting of the minds,' 'were members of a combination of persons,' and that the 'object of the combination was to accomplish the unlawful purpose of misappropriating Sanchez's trade secrets.'"

When providing examples of evidence "strongly support[ing] the conclusion that [the misappropriation of the Sanchez parties' information] was agreed to and coordinated by all [appellants]," the second amended petition states, "Reynolds met and conversed with Terra repeatedly in the days leading up to his copying of Sanchez information"; Reynolds extracted additional files after meeting and "discuss[ing] 'model inputs,' among other things," with Keith Brown, Terra's chief officer of operations; Reynolds "was in regular contact with Mewshaw and Hobbs" in the months before and during their departure from Sanchez Oil; and "Reynolds discussed with [Mewshaw and Hobbs] Sanchez's success" and information about Terra's acquisition of WPX and Terra's plans to reduce costs after the acquisition.

But although the original and first amended petitions did not use the words "met and conversed," "discussed" plans, and were "in regular contact," it gave fair

notice of such claims. *See id.*; *Kinder Morgan*, 589 S.W.3d at 898 (citing *Fawcett*, 492 S.W.3d at 26–27). Both the original and first amended petitions alleged that Terra solicited Sanchez Oil employees, including Reynolds, who "began targeting and soliciting additional [Sanchez Oil] employees for Terra," and who, "acting on behalf of and with the encouragement of his new employer Terra," copied files containing confidential information and used it to benefit himself and Terra. The first amended petition stated that, even while still employed by Sanchez Oil, Reynolds "provid[ed] input to Terra's acquisition model . . . utilizing Sanchez's trade secret information" and that "Terra hired Reynolds to gain access to this Sanchez information," conduct that all petitions characterized as "industrial espionage."

All of these factual allegations gave appellants fair notice in 2016 that the Sanchez parties were alleging appellants met, conversed, discussed plans, and were in regular contact. *See Chandni I*, 601 S.W.3d at 17 (stating that additional factual allegations in amended petition do not state new claim if claim is based on same essential factual allegations); *Paulsen*, 455 S.W.3d at 198 (same); *Fawcett*, 492 S.W.3d at 26–27 (stating that plaintiff's pleading was only required to give short statement of cause of action sufficient to give opposing party fair notice of claim involved) (citations omitted). The individual appellants allegedly each stole similar confidential information from the Sanchez parties in a similar manner: after talking

to Terra about employment opportunities, they downloaded confidential information from Sanchez's computers onto their personal thumb drives or emailed it to themselves, resigned from Sanchez Oil, began employment with Terra, and used the confidential information to benefit themselves and Terra. All of this requires communication and meeting. Thus, despite adding minor details to the second amended petition, appellants had been on notice of these claims since the original petition. *See Chandni I*, 601 S.W.3d at 17; *Paulsen*, 455 S.W.3d at 198.

We likewise conclude that the other additional language does not constitute new factual allegations. The second amended petition states that "Terra and Reynolds had a meeting of the minds to misappropriate Sanchez's trade-secret information and to use, acquire, and disclose it without Sanchez's consent" and that "[all appellants] had a meeting of the minds to continue misappropriating Sanchez's trade-secret information and to use, acquire, and disclose it without Sanchez's consent." But, as we discussed above, the original and first amended petitions included causes of actions for misappropriating trade secrets and other confidential information and for breaching or assisting with breaches of fiduciary duty based on the confidential information, and they were based on factual allegations that all appellants had improperly acquired, used, and disclosed the confidential information. *See Chandni I*, 601 S.W.3d at 17; *Paulsen*, 455 S.W.3d at 198. The Sanchez parties have consistently maintained that appellants misappropriated trade

36

secrets and other confidential information and used it for appellants' own benefit and to the Sanchez parties' harm.

Appellants also argue that "[the Sanchez parties'] prior pleadings made no mention of coordinated action between all [appellants] to steal trade secrets, let alone a meeting of the minds and agreement to commit overt acts in furtherance of a scheme against the Sanchez [p]arties," but this is incorrect. The original petition stated, "[T]his operation was part of a coordinated plan by Terra to extract Sanchez'[s] trade secrets and confidential information." Both the original and the first amended petition stated, "Terra recruited Hobbs to further its scheme to misappropriate Sanchez's trade secret [and other confidential and proprietary] information." Thus, we conclude that all petitions alleged a scheme that reasonably put appellants on fair notice that the Sanchez parties were alleging that appellants agreed and coordinated to work together to misappropriate or assist in the misappropriation of the Sanchez parties' trade secrets and other confidential information. *See Paulsen*, 455 S.W.3d at 198; *Kinder Morgan*, 589 S.W.3d at 898 (citing *Fawcett*, 492 S.W.3d at 26–27).

Finally, appellants argue that the Sanchez parties' non-suit of counts 2–4, which the trial court dismissed with prejudice, does not change the analysis because the Sanchez parties "still seek to hold [appellants] jointly and severally liable for the same TCPA-protected conduct under the remaining causes of action." We disagree.

37

Counts 2–4 were not the only claims asserting joint and several liability, the premise upon which appellants' argument is based. Counts 6 and 7, which we determined above were not new claims based on new factual allegations that reset the deadline to file a TCPA motion, also expressly assert joint and several liability against appellants. The earlier aiding-and-abetting claim, which was split into counts 6 and 7, also expressly asserted joint and several liability against appellants. Thus, appellants have been on notice since the original petition that the Sanchez parties sought to hold them jointly and severally liable. *See Paulsen*, 455 S.W.3d at 198; *Kinder Morgan*, 589 S.W.3d at 898 (citing *Fawcett*, 492 S.W.3d at 26–27).

We conclude that the Sanchez parties' second amended petition did not assert a new "legal action" that reset the sixty-day clock to file a motion to dismiss under the TCPA. We hold that the trial court did not err by dismissing appellants' amended TCPA motion for untimeliness.[6]

We overrule appellants' first issue.

## D.    Whether Appellants' Amended Motion to Dismiss Was Frivolous or Was Solely Intended to Delay

In their final issue, appellants argue that the trial court abused its discretion in assessing attorney's fees against them because they did not file their TCPA motion

---

[6]    Because we determine that appellants' amended TCPA motion was untimely, we do not consider their other issues concerning the applicability of the TCPA to the Sanchez parties' claims in the second amended petition.

solely for delay.[7] Appellants contend that they are exercising their rights under the TCPA, including seeking interlocutory appellate review of the merits of their claims, and that they were not bound to assert their claims in a motion for summary judgment, which does not allow for interlocutory appellate review. The Sanchez parties respond that attorney's fees under the TCPA are appropriate if a motion is frivolous or solely intended for delay; a court need not find both. They further argue that appellants filed two TCPA motions, took "legal positions that were diametrically opposed," and, in the amended TCPA motion, sought dismissal of all but one of the nine counts alleged against them, whereas the original motion sought dismissal of only three counts. Further, the Sanchez parties argue that they offered to revert to their earlier petition if appellants would dismiss their amended TCPA motion, but appellants declined and admitted that they pursued the TCPA motion rather than a summary-judgment motion because the former allowed for interlocutory review.

Under the TCPA, "[i]f the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(b). We review the trial court's decision to award costs and attorney

---

[7]  Appellants do not challenge the amount of the award, but only the trial court's decision to award costs and attorney's fees.

fees to a responding party under section 27.009(b) for an abuse of discretion. *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied) (citation omitted); *see ADB Interest, LLC v. Wallace*, 606 S.W.3d 413, 440 (Tex. App.—Houston [1st Dist.] 2020, pet. filed) (reviewing trial court's award of attorney's fees to TCPA movant under section 27.009(a)(1) for abuse of discretion) (citing *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016), and *McGibney v. Rauhauser*, 549 S.W.3d 816, 820 (Tex. App.—Fort Worth 2018, pet. denied)). "A trial court does not abuse its discretion merely because the appellate court would have ruled differently in the same circumstance," but rather "the appropriate inquiry is whether the court acted without reference to any guiding rules or principles, that is, whether the court's act was arbitrary or unreasonable." *Wallace*, 606 S.W.3d at 440 (citing *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995), and *Low v. Henry*, 221 S.W.3d 609, 614, 620 (Tex. 2007)); *Sullivan*, 551 S.W.3d at 857 (quoting *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)).

Here, the trial court found that appellants' amended TCPA motion was intended solely for delay, but it did not make a finding whether the motion was also frivolous. We agree with the Sanchez parties that delay motivated appellants to file their amended TCPA motion. Two years into this litigation and on the eve of trial, appellants filed their original TCPA motion seeking dismissal only of counts 2–4. In

40

response, the Sanchez parties non-suited those claims and filed a notice of non-opposition to appellants' original TCPA motion in order to proceed to trial. The trial court granted appellants' original TCPA motion and dismissed counts 2–4 with prejudice, but appellants filed an amended TCPA motion seeking dismissal of all but one remaining cause of action. When the trial court denied the amended TCPA motion, appellants filed this interlocutory appeal. We agree that the trial court did not abuse its broad discretion in finding that appellants filed the amended TCPA motion solely to delay and, accordingly, in not moving on to determine whether it was frivolous as well.

Moreover, it is notable that, while the trial court did not go on to determine that appellants' TCPA motion was frivolous, or lacked any basis in law or fact, that motion was filed in response to Sanchez's second amended petition, filed in July 2018, two years after its filing of its first amended petition in July 2016, which asserted materially identical claims. This Court and all our sister courts that have considered the arguments presented by appellants have determined that the addition of newly detailed claims or claims based essentially on the same facts and asserted against the same parties do not constitute new causes of action that can justify the otherwise untimely filing of a TCPA motion, as shown above.

That all courts which have considered TCPA motions to dismiss filed on similar grounds have rejected them is strong evidence that appellants' TCPA claims

are indeed frivolous. *See Sullivan*, 551 S.W.3d at 857–58 (finding defendant's TCPA motion not frivolous in part because defendant filed motion "to posit an arguably meritable legal theory about the applicability of the TCPA"). Accordingly, we cannot say that the trial court acted without reference to any guiding rules or principles in concluding that appellants filed their amended TCPA motion solely to delay the trial proceedings and not to advance any meritorious grounds for dismissal of the Sanchez parties' claims and that, therefore, the trial court's dismissal of appellants' amended TCPA motion was arbitrary, unreasonable, and without reference to guiding principles. *See Wallace*, 606 S.W.3d at 440. Rather, we conclude that the trial court did not abuse its discretion in finding that the motion was solely intended to delay and in awarding costs and attorney's fees to the Sanchez parties after denying appellants' amended TCPA motion. *Cf. id.* (finding that circumstances do not support reasonable finding that delay was sole factor in filing TCPA motion because "other potential reasons" for filing motion existed in record, including positing "arguably meritable," nonfrivolous legal theories). Therefore, we hold that the trial court did not err by awarding costs and attorney's fees to the Sanchez parties.

We overrule appellants' final issue.

## Conclusion

We affirm the order of the trial court denying appellants' amended motion to dismiss the underlying litigation under the TCPA and awarding to the Sanchez parties their attorney's fees and costs.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Hightower, and Countiss.